**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| ERNA D., | ) |
| | ) |
|     Plaintiff(s), | ) |
| | ) |
|     vs. | )    Case No. 4:25-CV-557 SRW |
| | ) |
| FRANK J. BISIGNANO, | ) |
| Commissioner of Social Security | ) |
| Administration, | ) |
| | ) |
|     Defendant(s). | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on review of an adverse ruling by the Social Security Administration. The Court has jurisdiction over the subject matter of this action under 42 U.S.C. § 405(g). The parties consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Plaintiff filed a Brief in support of the Complaint. ECF No. 18. Defendant filed a Brief in Support of the Answer. ECF No. 23. Plaintiff did not file a Reply. The Court has reviewed the parties' briefs and the entire administrative record, including the transcripts and medical evidence. Based on the following, the Court will affirm the Commissioner's decision.

I.     **Factual and Procedural Background**

On September 12, 2019 and November 21, 2019, Plaintiff Erna D. protectively filed applications for disability insurance benefits under Title II, 42 U.S.C. §§ 401, *et seq.*, and supplemental security income under Title XVI, 42 U.S.C. §§ 1381, *et seq*. Tr. 222-34. Plaintiff's applications were denied on initial consideration and reconsideration. Tr. 145-56, 159-64. On January 11, 2021, she requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 167-

81. Plaintiff appeared for a telephone hearing, with the assistance of counsel, on November 3, 2021. Tr. 66-103. Plaintiff testified concerning her disability, daily activities, functional limitations, and past work. *Id*. The ALJ also received testimony from vocational expert ("VE") Theresa Wolford. *Id*. On November 24, 2021, the ALJ issued an unfavorable decision finding Plaintiff not disabled. Tr. 42-65. Plaintiff filed a request for review of the ALJ's decision with the Appeals Council. Tr. 219-21. On October 27, 2022, the Appeals Council denied Plaintiff's request for review. Tr. 1-6. Plaintiff then filed a complaint in this Court that resulted in a Remand Order. Tr. 1683-1704. *See Erna D. v. Kijakazi*, Case No. 4:22-cv-1343-SRW (E.D. Mo. Nov. 20, 2023).

Plaintiff appeared for a second hearing in person with the assistance of counsel, on June 11, 2024. Tr. 1621-52. Plaintiff testified concerning her disability, daily activities, functional limitations, and past work. *Id*. The ALJ also received testimony from VE Delores Gonzalez. *Id*. On July 22, 2024, the ALJ issued an unfavorable decision finding Plaintiff not disabled. Tr. 1586-1620. Plaintiff filed a request for review of the ALJ's decision with the Appeals Council. Tr. 1580. On March 3, 2025, the Appeals Council denied Plaintiff's request for review. Tr. 1580-85. Accordingly, the ALJ's decision stands as the Commissioner's final decision.

With regard to Plaintiff's testimony, medical records, and work history, the Court accepts the facts as presented in the parties' respective statements of facts and responses. The Court will discuss specific facts relevant to the parties' arguments as needed in the discussion below.

## II.    Legal Standard

To be eligible for benefits under the Social Security Act, a plaintiff must prove she is disabled. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health &*

2

*Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" § 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. § 416.920(a)(1). First, the Commissioner considers the claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a severe impairment "which significantly limits claimant's physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *see also* 20 C.F.R. § 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), (d).

3

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011); *see also* 20 C.F.R. § 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC, and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work which exists in significant numbers in the national economy shifts to the Commissioner. *See Brock v. Astrue*, 574 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work which exists in significant numbers in the national economy, the

4

Commissioner finds the claimant not disabled. 20 C.F.R. § 416.920(a)(4)(v). If the claimant

cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At

Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of*

*persuasion* to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932.

If substantial evidence on the record as a whole supports the Commissioner's decision,

the Court must affirm the decision. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "[T]he threshold for such evidentiary sufficiency is

not high." *Id*. Under this test, the court "consider[s] all evidence in the record, whether it

supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir.

2016). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the

ALJ's determinations regarding the credibility of testimony, as long as those determinations are

supported by good reasons and substantial evidence." *Id*. The ALJ will not be "reverse[d] merely

because substantial evidence also exists in the record that would have supported a contrary

outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v.*

*Colvin*, 818 F.3d 364, 370 (8th Cir. 2016).

## III.    The ALJ's Decision

Applying the foregoing five-step analysis, the ALJ found Plaintiff meets the insured

status requirements of the Social Security Act through March 31, 2017. Tr. 1591. Plaintiff has

not engaged in substantial gainful activity since the alleged onset date of March 31, 2017. *Id*.

Plaintiff has the severe impairment of type 1 diabetes mellitus and diabetic peripheral

neuropathy. Tr. 1592. Plaintiff does not have an impairment or combination of impairments that

meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404,

5

Subpart P, Appendix 1. Tr. 1595. The ALJ found Plaintiff has the following RFC through the date last insured:

> [Plaintiff] has the residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b), or work requiring lifting and/or carrying 20 pounds occasionally and 10 pounds frequently, standing and/or walking about 6 hours in an 8-hour workday, and sitting about 6 hours in an 8-hour workday. The claimant can occasionally balance, kneel, crouch, crawl, stoop, and climb ramps and stairs; but cannot climb ladders, ropes, or scaffolds. The claimant cannot push and/or pull with her legs. She must avoid working at dangerous unprotected heights or around dangerous unprotected moving machinery; must avoid concentrated exposure to extreme heat or extreme cold. She can frequently handle, finger and feel bilaterally, but cannot do any commercial driving.

Tr. 1595-1610. The ALJ determined Plaintiff has no past relevant work. Tr. 1610. She was born on September 4, 1993 and was 23 years old, which is defined as a younger individual age 18-49, on March 13, 2017, her alleged disability onset date. Tr. 1611. Plaintiff has limited education. *Id.*

The ALJ indicated that the transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is "not disabled," whether or not Plaintiff has transferable job skills. *Id.* Relying on the testimony of the VE and considering Plaintiff's age, education, work experience, and RFC, the ALJ found there are jobs that exist in significant numbers in the national economy which the Plaintiff can perform, including representative occupations such as housekeeping cleaner (*Dictionary of Occupational Titles*, ("DOT") No. 323.687-014 with approximately 175,000 jobs in the national economy); price marker (*DOT* No. 209.587-034, with approximately 165,000 jobs in the national economy); routing clerk (*DOT* No. 222.687- 022, with approximately 123,000 jobs in the national economy). The ALJ also found the Plaintiff could perform jobs with identical non-exertional limitations at the sedentary exertional level, SVP 2, such as parimutuel ticket taker (*DOT* No. 219.587-010, with approximately 8,500 jobs in the national economy); office

helper (*DOT* No. 239.567-010, with approximately 5,300 jobs in the national economy); and

order caller (*DOT* No. 209.667-014, with approximately 11,000 jobs in the national economy

(light exertional level per the DOT, but performed at the sedentary level today)). Tr. 1611-12.

The ALJ concluded Plaintiff has not been under a disability, as defined in the Social

Security Act, from March 31, 2017, through the date of his decision, July 22, 2024. Tr. 1612.

## IV.   Discussion

Plaintiff presents three assignments of error: (1) the ALJ's decision failed to properly

evaluate the persuasiveness of the medical opinion evidence; (2) the RFC is not supported by

substantial evidence because the ALJ relied on the opinion of a non-examining physician

formulated one year prior to the hearing; and (3) the ALJ failed to properly evaluate her

subjective complaints of pain. ECF No. 18.

### A.  The ALJ's Evaluation of Medical Opinion Evidence

The underlying record includes medical opinions from consulting physicians, Dr. Robert

Cottone, Ph.D., Dr. Gretchen Brandhorst, Psy.D., Dr. Harry Cole, M.D., and Dr. Judee Bland,

M.D., as well as Plaintiff's treating physicians, Dr. David Glick, M.D., Dr. Jennifer Gafford,

Ph.D., Dr. Jaron Asher, M.D., and Dr. Aleksander Lanis, M.D. Plaintiff contends the ALJ failed

to properly discuss the supportability or consistency of the opinions of some of these physicians.

After reviewing and summarizing Plaintiff's entire medical record and Function Reports,

the ALJ discussed the persuasiveness of each medical opinion. Tr. 1604-10. Claims filed after

March 27, 2017, like Plaintiff's, require the ALJ to evaluate medical opinions pursuant to 20

C.F.R. § 404.1520c. This provision states the Social Security Administration "will not defer or

give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or

prior administrative medical finding(s), including those from [Plaintiff's] medical sources." 20

C.F.R. § 404.1520c(a). Rather, an ALJ is to evaluate the persuasiveness of any opinion or prior administrative medical finding by considering the: (1) supportability of the opinion with relevant objective medical evidence and supporting explanations; (2) consistency with the evidence from other medical sources and nonmedical sources in the claim; (3) relationship with the plaintiff, including length, purpose, and extent of treatment relationship, whether it is an examining source, and frequency of examination; (4) specialization; and (5) other relevant factors. 20 C.F.R. § 404.1520c(c). An ALJ must "articulate in [their] determination or decision how persuasive [they] find all of the medical opinions and all of the prior administrative medical findings in [the] case record." 20 C.F.R. §§ 404.1520c(b), 416.920c(b).

Supportability and consistency are the most important factors; therefore, an ALJ must explain how he or she considered these factors in the decision. 20 C.F.R. § 404.1520c(b)(2). The more relevant the objective medical evidence and supporting explanations presented by a medical source are to *support* his or her medical opinions or prior administrative medical findings, and the more *consistent* medical opinions or prior administrative medical findings are with other medical sources and nonmedical sources, "the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* An ALJ's failure to address either the consistency or supportability factors in assessing the persuasiveness of a medical opinion requires reversal. *Bonnett v. Kijakazi*, 859 Fed. Appx. 19 (8th Cir. 2021) (unpublished) (per curium) (citing *Lucus v. Saul*, 960 F.3d 1066, 1069-70 (8th Cir. 2020) (remanding because ALJ discredited physician's opinion without discussing factors contemplated in the regulation, as failure to comply with opinion-evaluation regulation was legal error)); *Starman v. Kijakazi*, 2021 WL 4459729, at *5 (E.D. Mo. Sept. 29, 2021) (same).

8

An ALJ may, but is not required to, explain how he or she considered the remaining factors. *Id. See Brian O. v. Comm'r of Soc. Sec.*, 2020 WL 3077009, at \*4-5 (N.D.N.Y. June 10, 2020) ("Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how he or she considered the medical opinions' and 'how persuasive he or she finds all of the medical opinions.'") (quoting § 404.1520c(a), (b), alterations omitted). An ALJ must articulate how persuasive he found all medical opinions and prior administrative medical findings in a claimant's case record. § 404.1520c(b). "The paragraph concerning the ALJ's evaluation of [a medical] opinion cannot be read in isolation but must be read as part of the overall discussion of plaintiff's RFC assessment." *Trosper v. Saul*, 2021 WL 1857124, at \*5 (E.D. Mo. May 10, 2021). Therefore, in order to determine whether the ALJ properly analyzed the persuasiveness of the medical opinions, the Court must first review the ALJ's RFC assessment as a whole.

### i. Prior Administrative Medical Findings (PAMF) of Dr. Harry Cole, M.D., and Dr. Judee Bland, M.D.

Plaintiff objects to the ALJ's evaluation of the PAMFs from state agents Dr. Cole and Dr. Bland. She argues the ALJ failed to properly evaluate the supportability and consistency of their opinions by omitting a discussion as to whether the doctors provided any supportive explanations or if they pointed to specific objective findings to support their conclusions. ECF No. 18 at 4.

Supportability considers the extent to which an examiner's objective findings and evidence support his or her conclusions. *See* 20 C.F.R. § 404.1520c(c)(1). Dr. Cole and Dr. Bland determined that Plaintiff could perform a range of medium exertion work, with an additional limitation of frequent feeling bilaterally due to neuropathy. Tr. 1604-05 (citing 114-124, 129-135, 136-142). The ALJ found their opinions to be partially persuasive. Tr. 1604. The

9

ALJ determined their assessments were supported and consistent to the extent that the assessments aligned with some of the evidence in the medical record, particularly regarding Plaintiff's physical capabilities and neurological status. Tr. 1605.

For example, the ALJ found Dr. Cole and Dr. Bland's assessments were supported and consistent with Plaintiff's physical examinations. These examinations often revealed full muscle strength, normal range of motion, and normal gait, as documented in the consultative examination by Deborah Wagner, P.A., in July 2020, and cited by Dr. Cole and Dr. Bland. Tr. Tr. 119, 122, 133, 134, 1036-1037. Additionally, neurological examinations in August 2022 and April 2023 demonstrated no significant sensory deficits, supporting the limitation to frequent feeling rather than a more restrictive limitation. Tr. 3300, 3545. The ALJ's determination utilized the supportability and consistency factors as the ALJ measured these medical opinions against the objective medical evidence.

The ALJ found, however, that Dr. Cole and Dr. Bland's determinations that Plaintiff could perform a range of medium exertion work, not consistent with the medical record, and that Plaintiff's exertional level should be light work with additional limitations as it reflected a more cautious approach, considering the entirety of Plaintiff's medical history and her fluctuating symptoms. Tr. 1605. The ALJ noted that while their assessment of medium exertion might be supported by certain aspects of Plaintiff's physical capabilities, the overall evidence, including her frequent hospitalizations and periods of symptom exacerbation, suggested that a lighter exertional level was more appropriate. *Id*. In support, the ALJ noted that during hospitalizations, Plaintiff would stabilize quickly, but her repeated admissions indicated her condition was more variable and might not support the sustained exertion required for medium work. *Id*. (citing Tr. 766, 938). The ALJ also found that the RFC was further supported by evidence of Plaintiff's

functional limitations beyond what Dr. Cole and Dr. Bland considered and that while their opinions are supported to an extent, the more restrictive RFC better encapsulates Plaintiff's overall functional limitations and medical history. Tr. 1605. Even so, the ALJ found that the "preponderance of the medical evidence does not support a finding that the claimant would be absent from work or off task outside customary work breaks in excess of customary employer tolerances." *Id*. The ALJ had clearly addressed the consistency factor by comparing the opinions of the doctors to the rest of the medical record.

Though the Court does not find the ALJ erred in discussing supportability and consistency, the ALJ adopted more restrictive limitations than the limitations opined by the state agent consultants, rendering any deficiencies on the part of the ALJ to be harmless error. The ALJ's greater exertional limitations renders any error in the failure to elaborate on persuasiveness harmless. *See, e.g., Berdinka v. O'Malley*, 2024 WL 518919, at *5 (E.D. Mo. Feb. 9, 2024) ("The ALJ ultimately found that [Plaintiff] had greater exertional limitations than found by Dr. Lu—as well as non-exertional limitations—due to his combination of impairments that were not considered by Dr. Lu. As such, any errors in the ALJ's explanation of supportability and consistency with regard to Dr. Lu's opinion did not affect the outcome and were harmless."); *Laramie v. Kijakazi*, 2023 WL 2610215, at *5 (E.D. Mo. Mar. 23, 2023) ("[b]ecause the ALJ found that the record supported *greater* mental limitations than found by the state agency psychological consultants, any error in the ALJ's failure to elaborate on her analysis of these prior administrative findings was harmless.").

### ii.    PAMFs of Dr. Cole and Dr. Robert Cottone, Ph.D.

Plaintiff next contends the ALJ's "evaluation of the evidence in general without reference to the actual evidence that was available to the doctors is improper" and that the ALJ's

"generalized statement that the opinions are not well-supported by or consistent with the overall medical evidence available" but cites no case law in support. ECF No. 18 at 5-6. The ALJ found the prior administrative medical findings of Dr. Cole and Dr. Cottone less persuasive and not well supported by or consistent with the overall medical evidence available and failed to fully consider the substantial documentation in Plaintiff's medical records. Tr. 1605-06 (citing Tr. 104-24).

Drs. Cole and Cottone found that "[d]ue to lack of functional and medical evidence during the insured period, there is insufficient evidence in [the] file." Tr. 109, 110. The ALJ noted the medical records contained detailed and consistent information regarding Plaintiff's condition and functional limitations throughout the relevant period. Tr. 1605. The ALJ also considered Plaintiff's treatment history, including frequent hospitalizations for diabetic ketoacidosis (DKA) and ongoing issues related to diabetes and neuropathy, which were thoroughly documented. *Id*. (citing Tr. 33-500, 564-758, 1277-1356). The ALJ also acknowledged medical notations that indicate Plaintiff's hospitalizations for DKA and her ongoing issues need not persist in occurring, such that there is no support in this record for any finding that Plaintiff would have work absenteeism with any specific frequency. *Id*. The ALJ additionally noted Plaintiff's physical examinations repeatedly showed normal findings such as full muscle strength, normal gait, and normal mental status, as seen in the consultative examination by Deborah Wagner, P.A., in July 2020. Tr. 1605-06 (citing Tr. 1036).

Next, the ALJ acknowledged Plaintiff's medical history included significant evidence of her functional capabilities and limitations, which contradicted Dr. Cole and Cottone's opinions that there was insufficient evidence. *Id*. For example, Plaintiff's physical examinations often revealed normal neurological status with no significant sensory deficits, as noted in evaluations

12

from August 2022 and April 2023, and records also reflected periods where Plaintiff's diabetes

was well-managed and complications were minimal, further indicating that there was sufficient

information to determine a residual functional capacity. *Id*. (citing 3545, 3300, 1519). The ALJ

concluded

> while Dr. Cole's and Dr. Cottone's opinions highlight the challenges in assessing
> Plaintiff's residual functional capacity, the preponderance of the medical evidence
> available before Plaintiff's DLI provides a comprehensive basis for evaluating her
> functional limitations. The detailed and consistent documentation in the medical records
> supports the ability to determine a residual functional capacity, making the opinions of
> insufficient evidence less persuasive when compared to the overall evidence.

*Id*.

Plaintiff's arguments here fail. Within the determination, the ALJ specifically discussed

and adequately articulated supportability and consistency as to both consultants' opinions by

comparing their overall opinions to medical records. As the Commissioner points out, the "ALJ

properly considered longitudinal medical evidence from both before and after the one-day period

at issue." ECF No. 23 at 5 (citing *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2007) ("Evidence

from outside the insured period can be used in 'helping elucidate a medical condition during the

time for which benefits might be rewarded.'") (citations omitted)).

### iii.    The Medical Opinion from Dr. David Glick, M.D.

Next, Plaintiff argues the ALJ failed to properly evaluate the supportability and

consistency of the opinion by Dr. David Glick, M.D. ECF No. 18 at 6.

The ALJ acknowledged, but did not find persuasive, the September 2020 statement by

Plaintiff's treating physician, Dr. Glick, that Plaintiff was "100 percent disabled from seeking,

maintaining gainful employment at this time." Tr. 1606 (citing Tr. 1075). In coming to this

conclusion, the ALJ pointed to Dr. Glick's December 2019 record, indicating Plaintiff's

abdominal pain was effectively controlled with Metoclopramide and her poor diabetic control

13

was a major factor in her repeated hospitalizations for DKA, which the ALJ found to be a critical observation given the frequency and severity of these episodes. *Id*. (citing 1145, 1135, 1067). The ALJ also pointed to Dr. Glick's February 2021 record attributing Plaintiff's poor diabetic management to denial and apathy, highlighting her flat affect and depressed mood, despite normal mental status examinations, and expressed concern about the potential for serious complications without proper diabetes management. *Id*. (citing 1558, 1556).

The ALJ found Dr. Glick's opinion that Plaintiff was entirely disabled weak when considering the broader medical record. Although Dr. Glick's notes provide detailed accounts of Plaintiff's medical issues, other evidence indicated that Plaintiff retains some functional capacity. Tr. 1606-07. Such records included physical examinations frequently revealing normal findings, such as full muscle strength, normal gait, and no significant sensory deficits. Tr. 1036. Further, treatment notes from May 2021 indicating that Plaintiff's diabetes was without complication when she adhered to her medication regimen, suggesting that her symptoms can be managed effectively. Tr. 1519.

Supportability considers the extent to which an examiner's objective findings and evidence support his or her conclusions. *See* 20 C.F.R. § 404.1520c(c)(1). As to Dr. Glick's opinion, the ALJ adequately articulated supportability by finding his opinion was not supported by a thorough review of Plaintiff's mental history and detailed narratives explaining their findings. *Tyrell W. v. Bisignano*, 2026 WL 522696, at *4 (E.D. Mo. Feb. 25, 2026) (citing 20 C.F.R. § 404.1520c(c)(1); *Starman,* 2021 WL 4459729, at *4 (supportability discussion, includes for example, the relevancy of the objective medical evidence relied on in the opinions, the supporting explanations for the findings, or the form of the opinions); *Gary D. v. King*, 2025 WL 554026, at *4 (D. Minn. Feb. 3, 2025) (finding sufficient supportability discussion where ALJ

14

discussed state agency doctor's opinions in relation to medical record; noting that consistency and supportability analyses can somewhat overlap)).

The ALJ also found the consistency of Dr. Glick's opinion with the medical evidence further challenged by Plaintiff's periods of symptom stabilization and improvement. Tr. 1607. The ALJ cited to evidence from the medical records which was inconsistent with Dr. Glick's opinion. *Id*. For instance, Plaintiff demonstrated periods of effective diabetes management and stabilization of her condition, including in late May 2021 when Dr. Glick's notes indicate that Plaintiff showed improvement and stabilization when engaging with her prescribed treatment regimen. *Id*. (citing Tr. 1545). The ALJ concluded Dr. Glick's opinion is not persuasive because Dr. Glick's assertion that Plaintiff is entirely disabled from gainful employment is not fully supported by the medical evidence because the broader medical record, including consistent normal physical examination findings and periods of stabilization, indicated that Plaintiff retains some functional capacity. *Id*.

To note, the ALJ correctly noted that Dr. Glick's opinion that Plaintiff was "100 percent disabled from seeking, maintaining gainful employment at this time" is a legal conclusion reserved to the Commissioner, and outside the realm of a medical doctor's expertise. Tr. 1606.

### iv.    The Medical Opinion from Dr. Aleksander Lanis, M.D.

Next, Plaintiff argues the ALJ failed to properly evaluate the supportability of the opinion by Dr. Aleksander Lanis, M.D. ECF No. 18 at 8-9.

The ALJ found the opinion of Dr. Aleksander Lanis, M.D., dated May 31, 2024, unpersuasive. Tr. 1607. Dr. Lanis opined that Plaintiff could perform light lifting and carrying but has significant limitations, including the ability to stand for only 30 minutes in a day and at one time, walk one block at a time, and requires the ability to shift positions at will. Tr. 4356-60.

15

Additionally, Dr. Lanis suggested that Plaintiff would need 1-2 unscheduled breaks for 30 minutes each, would miss 10 days of work per month, and that pain/symptoms would affect her attention and concentration for more than 20 percent of the day. *Id*.

The ALJ found these conclusions not well-supported by the broader medical evidence and inconsistent with Plaintiff's treatment records and documented functional abilities. Tr. 1607. The ALJ reasoned that the supportability of Dr. Lanis's opinion was weak when considering Plaintiff's documented physical capabilities and physical examinations, which frequently revealed normal muscle strength, range of motion and gait, no circulation abnormalities, no recurrent or slow-healing diabetic foot ulcers, and no clinical signs of decreased stamina either. *Id*. For example, during the consultative examination by Deborah Wagner, P.A., in July 2020, Plaintiff demonstrated full muscle strength, normal gait, and no significant sensory deficits. Tr. 1036. The ALJ found these findings suggest Plaintiff retains a greater functional capacity than Dr. Lanis's opinion implies. *Id*. Additionally, the ALJ pointed to treatment notes from May 2021 which highlighted that Plaintiff's diabetes was managed without complication when she adhered to her medication regimen and to Dr. Glick's notes from late May 2021 which also indicated that Plaintiff's condition improved and stabilized with appropriate treatment. *Id*. (citing Tr. 1519, 1545). The ALJ found these records demonstrate that Plaintiff's symptoms and functional limitations are not as severe or debilitating as Dr. Lanis suggests. Tr. 1607-08.

Dr. Lanis further opined that Plaintiff would miss 10 days of work per month and require frequent unscheduled breaks. Tr. 4359. The ALJ found this opinion inconsistent with Plaintiff's documented activities and medical evaluations, as well as Plaintiff's ability to perform daily activities and her normal physical and mental status examinations do not support such extreme limitations. Tr. 1608. For instance, despite reporting some functional limitations, Plaintiff was

often noted to be alert, oriented, and capable of performing daily activities independently. *Id.* (citing Tr. 3673). The ALJ found that Dr. Lanis's opinion was unpersuasive due to its lack of support from the broader medical evidence and its inconsistency with Plaintiff's treatment records and documented functional abilities, and the medical evidence indicated that Plaintiff retains a greater functional capacity than Dr. Lanis suggests, with periods of symptom stabilization and effective management. *Id*. The ALJ concluded that the opinion of Dr. Lanis was not found persuasive when establishing work restrictions for Plaintiff. *Id*. Here too, the ALJ adequately articulated supportability by finding his opinion supported by their thorough review of Plaintiff's mental history and detailed narratives explaining their findings.

v.      The Medical Opinion from Jennifer Gafford, Ph.D.

Plaintiff also argues the ALJ failed to properly evaluate the supportability of Dr. Gafford's opinion and failed to evaluate the consistency of the opinion. ECF No. 18 at 7-8.

The ALJ determined her opinion to be unpersuasive and unsupported due to her conclusions about Plaintiff's work pace and diabetes, which fall outside her realm of expertise and because the broader medical evidence did not fully support the marked mental limitations she described and her own treatment notes did not establish a basis to support her conclusions. Tr. 1609-10. Dr. Gafford completed Mental Medical Source Statements in September 2020 and October 2021. Tr. 1043-47, 1566-79. Within both reports, she opined that Plaintiff had marked limitations in several areas, and her overall pace of production during an 8-hour workday would be at least 31% below average. Tr. 1044-45, 1566-67. The ALJ reasoned that while Dr. Gafford was a psychologist and provided insights into Plaintiff's mental health, her conclusions about Plaintiff's work pace and the impact of her diabetes were unsupported, fell outside her realm of expertise, and there was no evidence she has had any basis to measure Plaintiff's work pace. Tr.

17

1609. The ALJ further found that Dr. Gafford's reliance on Plaintiff's diabetes as the primary issue preventing her from working, further undermined the persuasiveness of Dr. Gafford's opinion because as a psychologist, Dr. Gafford's primary expertise was in mental health conditions and their impact on functioning, not in assessing medical conditions such as diabetes. *Id*.

The ALJ also found the medical evidence of record inconsistent with Dr. Gafford's conclusions about Plaintiff's mental limitations because despite Plaintiff's health challenges, her mental status examinations frequently revealed normal findings, including intact cognitive functions, normal memory, and good judgment. Tr. 1609. The ALJ cited to evidence from the medical records which was inconsistent with Dr. Gafford's opinion. *Id*. For example, during the consultative examination by Deborah Wagner, P.A., in July 2020, Plaintiff was found to be fully oriented with normal memory and affect, and able to understand and follow directions. Tr. 1037. Additionally, treatment notes often indicated that Plaintiff was alert, oriented, and demonstrated normal behavior, thought content, and judgment. Tr. 1514-15, 3673.

The Court finds the ALJ properly considered the supportability and consistency factors in accordance with the applicable regulations. *See* 20 C.F.R. §§ 404.1520c(b)(2), 404.1520c(c)(1)– (2).

## B.  Residual Functional Capacity

Plaintiff next contends that the assessment of RFC is not supported by substantial evidence. ECF 18 at 10. Plaintiff argues the ALJ did not explain how the medical record corroborated Plaintiff's ability to perform light work on a full-time basis with the stated limitations. Essentially, Plaintiff argues the ALJ substituted his own opinions for those of the physicians.

18

The RFC is "the most [a claimant] can still do despite" Plaintiff's physical or mental limitations. 20 C.F.R. § 404.1545(a)(1). "'The RFC is a function-by-function assessment of an individual's ability to do work-related activities based upon all of the relevant evidence.'" *Casey v. Astrue*, 503 F.3d 687, 696-97 (8th Cir. 2007) (quoting *Harris v. Barnhart*, 356 F.3d 926, 929 (8th Cir. 2004)). "While the ALJ must consider all of the relevant evidence in determining a claimant's RFC, the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Id.* (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)). "However, there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley*, 829 F.3d at 932 (citing *Myers v. Colvin*, 721 F.3d 521, 526-27 (8th Cir. 2013); *Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012)). "In the absence of medical opinion evidence, 'medical records prepared by the most relevant treating physicians [can] provide affirmative medical evidence supporting the ALJ's residual functional capacity findings.'" *Id.* (alteration in original) (quoting *Johnson v. Astrue*, 628 F.3d 991, 995 (8th Cir. 2011)). "With the medical record adequately developed, the ALJ was not required to seek additional information . . . or order a [consultative examination]." *Id.* (citing *KKC ex rel. Stoner*, 818 F.3d at 372-73; 20 C.F.R. § 404.1519a(b)). This Court "will not disturb an ALJ's RFC finding so long as it is supported by 'substantial evidence in the record as a whole.'" *Austin v. Kijakazi*, 52 F.4th 723, 730 (8th Cir. 2022) (quoting *Schmitt v. Kijakazi*, 27 F.4th 1353, 1360 (8th Cir. 2022)).

The ALJ first noted that at the June 11, 2024 hearing, Plaintiff testified she tried to work since her last hearing, but it only lasted out a few months at most and it ended because she was ill and had too many bathroom breaks due to stomach pain. Tr. 1632. She testified that her stomach problems and high blood glucose resulted in having to go to the bathroom constantly.

19

Tr. 1633. She stated she cannot stand, walk, or sit for long due to neuropathy, pain, numbness, and swelling in her feet. Tr. 1634. She reported going to the bathroom ten times per day or more, up to an hour at a time. Tr. 1635-36. She testified to daily stomach pain, which requires her to lie down. Tr. 1637-38. She further testified she can only stand for 30 minutes at a time and 30 minutes total in a day; and needs breaks every 20 to 30 minutes to sit. Tr. 1638-39.

The ALJ then considered Plaintiff's own description of her impairments and limitations. Tr. 1600. In her Function Reports, dated December 2019 and October 2020, Plaintiff indicated that she was alternating between living with family and friends, she was spending her days lying down or sleeping, and that she lacked energy due to her hypertension, high blood sugar and nerve pain, but she cited no specific difficulty tending to her own personal grooming. Tr. 267-277, 292-299. Plaintiff also stated that she was able to walk or get rides to get where she needed to go and that she could walk for five minutes without requiring a rest break. Tr. 270, 272. The ALJ noted this "level of independent function is inconsistent with a finding of disability and the claimant was noted to be independent in her activities of daily living in the treatment notes." Tr. 1600. The ALJ further found, "[n]othing convincing exists in the record to suggest that she is incapable of full-time work activity, so long as she adheres to her recommended diabetic treatment regimen, for which she was repeatedly advised, including in writing." Tr. 1600-01 (citing Tr. 1378).

The ALJ then reviewed and summarized Plaintiff's medical records and Function Reports. Tr. 1597. The ALJ noted Plaintiff's "well-documented history of repeated non-compliance-related hospitalizations for diabetic ketoacidosis (DKA)." Tr. 1597 (citing Tr. 333-500, 564-758, 1277-1356). In 2015, Plaintiff was noted to be "highly non-compliant" and that non-compliance was consistently noted up until and after the time she alleges becoming disabled

in March 2017. Tr. 464, 672, 674, 679, 684, 749. The ALJ also noted that Plaintiff often left the hospital against medical advice. Tr. 346, 348, 394, 404, 422, 470, 571, 599, 625, 685, 709, 791, 1364. Despite Plaintiff's repeated hospitalizations for non-compliance, her physical examination remained otherwise unremarkable, and her mental status was normal. Tr. 777. The Eight Circuit has held that the ALJ can rely on a claimant's resistance to treatment as a factor that undermines her claim of severe disabling conditions. *Swarthout v. Kijakazi*, 35 F.4th 608, 612 (8th Cir. 2022). In sum, it was not improper for the ALJ to have considered Plaintiff's noncompliance with her medical treatment in determining her RFC. See *Brown v. Barnhart*, 390 F.3d 535, 540-41 (8th Cir. 2004).

The ALJ thoroughly summarized Plaintiff's medical record and noted the determination that Plaintiff "retains the residual functional capacity to perform a range of light work is supported by the preponderance of the evidence in the medical records." Tr. 1604. The ALJ wrote that despite Plaintiff's "allegations of severe limitations due to diabetes mellitus type I and diabetic peripheral neuropathy, the objective medical evidence consistently indicates that her condition can be managed effectively." *Id*. For example, treatment notes from May 2021 indicated that Plaintiff's diabetes was noted to be without complication. Tr. 1519. Plaintiff's physical examinations frequently revealed normal findings, such as full muscle strength and range of motion, normal gait, and normal mental status, as documented in the consultative examination by Deborah Wagner, P.A., in July 2020. Tr. 1036. Additionally, there is no evidence of any end organ damage, or any recurrent or slow-healing foot ulcers. Tr. 1604. The ALJ further noted Plaintiff's medical history reflects frequent periods of stabilization and improvement in her condition. *Id*. For example, Dr. David Glick's notes from December 2019 highlight that Plaintiff experienced effective control of her abdominal pain. *Id*. (citing Tr. 1145). The ALJ noted even

21

during hospitalizations, Plaintiff was consistently stabilized quickly and discharged in good condition, indicating that her symptoms could be effectively managed. Tr. 1604. "[T]he conservative treatment, management with medication, and lack of required surgical intervention all support the ALJ's RFC determination." *Buford v. Colvin*, 824 F.3d 793, 797 (8th Cir. 2016) (citing *Wildman v. Astrue*, 596 F.3d 959, 965 (8th Cir. 2010) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling.")).

Additionally, the ALJ noted Plaintiff's neurological examinations do not show significant sensory deficits, further supporting the assessment. *Id*. For instance, her neurological examinations in August 2022 and April 2023 demonstrated no neurological deficits. Id (citing Tr. 3545, 3300). The ALJ found "the fact that her physical and mental status examinations often showed normal findings, such as during her hospitalization in November 2019, … further supports the finding that her diabetes and related symptoms can be managed, enabling her to perform light work activities as specified in the residual functional capacity." *Id*. (citing Tr. 938). The ALJ also noted, "[m]ore importantly, there is no evidence of any diabetic ketoacidosis since May 2022, and despite the claimant's allegations of significant gastrointestinal issues, her workup was normal." *Id*. (citing Tr. 3763, 3771, 3787).

After reviewing the objective medical record, the ALJ explained his RFC determination as follows:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. The evidence reflects that the claimant is being treated for diabetes mellitus type I; and diabetic peripheral neuropathy. While the claimant has reported the inability to work due to a combination of physical symptoms, the objective medical evidence does not support the claimant's allegations of disabling impairments. Given these circumstances, it becomes

22

> necessary to consider the evaluation factors from Ruling SSR 16-3p along with the record as a whole in order to determine whether the claimant is as limited as she has alleged.
>
> …
>
> After a thorough review of the evidence of record including Exhibits 1E-27E and 1F-32F, the claimant's allegations and testimony, forms completed at the request of Social Security, the objective medical findings, medical opinions, and other relevant evidence, the undersigned finds the claimant capable of performing work consistent with the residual functional capacity established in this decision.

Tr. 1596, 1610.

The Court finds that substantial evidence supports the determination that Plaintiff had the RFC to perform light work with additional limitations. *See Austin*, 52 F.4th at 728, 730-31 (court will not disturb the ALJ's decision when it falls within the "available zone of choice"; finding that substantial evidence supported the ALJ's determination where the ALJ considered claimant's treatment notes, course of treatment, and daily activities); *Hurd*, 621 F.3d at 738. As summarized in his decision, the ALJ relied on the objective medical evidence of record, which was specifically considered and factored into the evaluation of Plaintiff's RFC. To account for Plaintiff's credible limitations with respect to all of her impairments, the ALJ limited her to light work. These limitations were consistent with reports of her activities of daily living, medication and treatment efficacy, and symptom improvement with medication management – all of which the ALJ addressed in his determination.

The Social Security regulations permit the ALJ to consider medical source evidence as appropriate. 20 C.F.R. § 416.920a(b)(1) (2017). Ultimately, "the interpretation of physicians' findings is a factual matter left to the ALJ's authority." *Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016). Although Plaintiff may believe that the ALJ should have assessed the medical evidence differently to support greater limitations, it is not this Court's role to reweigh the medical evidence of Plaintiff's limitations considered by the ALJ in his determination of

23

Plaintiff's RFC. *Hensley*, 829 F.3d at 934. Plaintiff's assertion that there was no functional medical evidence available in the record after the ALJ discounted the medical opinions fails, as there is no requirement that the RFC finding be supported by a specific medical opinion, and the examination findings considered by the ALJ speak directly to Plaintiff's ability to function in the workplace. *See Hurst v. Kijakazi*, 2021 WL 3021424, at \*7 (E.D. Mo. July 16, 2021) ("[O]bjective medical findings and other medical evidence can constitute sufficient medical support for an RFC assessment even in the absence of medical opinion evidence."); *Schmitt*, 27 F.4th at 1360 (RFC determination is based on all relevant evidence, including the medical records, observations of treating physicians and others, and claimant's subjective complaints); *Noerper v. Saul*, 964 F.3d 738, 744 (8th Cir. 2020) (RFC must be supported by some medical evidence of claimant's ability to function in the workplace; clarifying that ALJ is not required in all instances to "obtain from medical professionals a functional description that wholly connects the dots between the severity of pain and the precise limits on a claimant's functionality").

The Court finds Plaintiff's argument that the ALJ failed to fully and fairly develop the record unavailing. "Ultimately, the claimant bears the burden of proving disability and providing medical evidence as to the existence and severity of an impairment," *Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013) (citations omitted), and the RFC need only include the credible limitations supported by the record, *see Tindell v. Barnhart*, 444 F.3d 1002, 1007 (8th Cir. 2006). While an ALJ does have a duty to fully develop the record if a critical issue is undeveloped or there is insufficient medical evidence to determine whether the claimant is disabled, *see, e.g.*, *Johnson*, 627 F.3d at 319-20. Plaintiff has not convinced the Court that such circumstances are present here. The Court finds that the ALJ's RFC determination is supported by substantial evidence on the record as a whole.

### C.  Pain Evaluation

Next, Plaintiff argues the ALJ did not properly evaluate her pain complaints. When considering a claimant's self-reported symptoms and limitations, the ALJ must evaluate whether the claimant's subjective statements are consistent with and supported by the record as a whole. 20 C.F.R. § 404.1529(c); SSR 16-3p. "The credibility[1] of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall*, 274 F.3d at 1218. The Court must defer to the ALJ's credibility determinations "so long as such determinations are supported by good reasons and substantial evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). When determining the credibility of a claimant's subjective complaints, the ALJ must consider all evidence relating to the complaints, including the claimant's daily activities; the duration, frequency and intensity of the symptoms; any precipitating and aggravating factors; the dosage, effectiveness and side effects of medication; and any functional restrictions. 20 C.F.R. § 404.1529(c)(3); SSR 16-3p; *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). These are known as the "*Polaski* factors." Where an ALJ explicitly considers the relevant factors but then discredits a claimant's complaints for good reason, the decision should be upheld. *Hogan v. Apfel*, 239 F.3d 958, 962 (8th Cir. 2001).

Plaintiff argues the ALJ erred in evaluating the *Polaski* factors. Specifically, Plaintiff contends that the ALJ failed to evaluate any of the other *Polaski* factors, including the duration, frequency, and intensity of pain, other than to suggest it was "effectively controlled," and

---

[1] This was once referred to as a credibility determination, but the agency has now eliminated use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of an individual's character. However, the analysis remains largely the same, so the Court's use of the term credibility refers to the ALJ's evaluation of whether a claimant's "statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and the other evidence of record." *See* SSR 16-3p, 2017 WL 5180304, at *8 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3); *Lawrence v. Saul*, 970 F.3d 989, 995 n.6 (8th Cir. 2020) (noting that SSR 16-3p "largely changes terminology rather than the substantive analysis to be applied" when evaluating a claimant's subjective complaints).

provided no discussion of the dosage, effectiveness and side effects of medications or precipitating and aggravating factors. ECF No. 18 at 15. In making his determination, the ALJ discussed the objective medical evidence related to Plaintiff's impairments of diabetes mellitus type I and diabetic peripheral neuropathy. The ALJ wrote:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> The evidence reflects that the claimant is being treated for diabetes mellitus type I; and diabetic peripheral neuropathy. While the claimant has reported the inability to work due to a combination of physical symptoms, the objective medical evidence does not support the claimant's allegations of disabling impairments.

Tr. 1596.

Here, the ALJ affirmatively stated in his decision that he considered all of Plaintiff's symptoms based on the requirements of 20 C.F.R. §§ 404.1529 and 416.929 and Social Security Ruling 16-3p. Tr. 1595-96. The ALJ is "not required to discuss each *Polaski* factor as long as '[he] acknowledges and considers the factors before discounting a claimant's subjective complaints.'" *Halverson*, 600 F.3d at 932 (quoting *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009)). In formulating the RFC, the ALJ explicitly considered the objective medical evidence of record, including Plaintiff's daily activities, statements concerning the intensity, persistence and limiting effects of her symptoms, and found that they are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in his decision. Tr. 1594-96, 1599-1601, 1607-08, 1610. The ALJ concluded that Plaintiff's "side effects she experiences due to her diabetes appears to be a direct result of her non-compliance with treatment and nothing convincing exists in the record to suggest any permanent end-organ damage aside from some

26

mild neuropathy. There is nothing persuasive in the treatment notes to suggest that the claimant would have a listing-level diabetic impairment with treatment compliance since she is quickly stabilized during her hospitalizations." Tr. 1595.

The Eighth Circuit has held that an ALJ "is entitled to make a factual determination that a claimant's subjective pain complaints are not credible in light of objective medical evidence to the contrary." *Grindley v. Kijakazi*, 9 F.4th 622, 630 (8th Cir. 2021) (citation omitted). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003). The ALJ adequately discussed the medical evidence of record. Contrary to Plaintiff's assertions that the ALJ did not discuss the *Polaski* factors, the ALJ noted the Regulations referencing those factors. The Court finds no error as to the ALJ's evaluation of Plaintiff's pain.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff Erna D.'s Complaint is **DISMISSED, with prejudice**. A separate judgment will accompany this Memorandum and Order.

**IT IS FURTHER ORDERED** that the Clerk of Court shall substitute Frank Bisignano for Leland Dudek in the court record of this case.

So Ordered this 24th day of July, 2026.

STEPHEN R. WELBY
**UNITED STATES MAGISTRATE JUDGE**

27